UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                                                    :
SILKA SURE HECHT JACOBOWITZ, JACOB            :          07 CV 658 (ARR)(VVP)
JACOBOWITZ, SOLOMON BERKOWITZ, EDITH          :
BERKOWITZ, and DAVID HOCHHAUSER,              :          NOT FOR ELECTRONIC
                                                                    :          OR PRINT
                          Plaintiffs,         :          PUBLICATION
                                                                    :
        -against-                             :
                                                                    :
CITY OF NEW YORK DEPARTMENT OF HOUSING        :          OPINION AND ORDER
PRESERVATION AND DEVELOPMENT, KENT            :
VILLAGE HOUSING COMPANY, INC., and BEDFORD :
GARDENS COMPANY, L.P.,                        :
                                                                    :
                          Defendants.         :
                                                                    :
-------------------------------------------------------------------- X

ROSS, United States District Judge:

        Plaintiffs Silka Sure Hecht Jacobowitz, Jacob Jacobowitz, Solomon Berkowtiz, Edith

Berkowitz, and David Hochhauser commenced this action on February 14, 2007, with the filing

of a complaint against the City of New York Department of Housing Preservation and

Development ("HPD"), Kent Village Housing Company, Inc., and Bedford Gardens Company,

L.P. ("Bedford Gardens").  (Dkt. No. 1.)

        Simultaneously, by order to show cause, plaintiffs sought, inter alia, a preliminary

injunction against Bedford Gardens to stay the eviction of the Jacobowitz plaintiffs–set for

February 15, 2007 (see Order to Show Cause Ex. A)–and to restore the Berkowitz plaintiffs to

their apartment or alternatively to stay the reletting of the Berkowitz unit.  At a conference on

February 14, 2007, with lawyers for Bedford Gardens participating by telephone, plaintiffs and

Bedford Gardens stipulated to stay the eviction of the Jacobowitz plaintiffs and the reletting of

1

Dockets.Justia.com

the Berkowitz plaintiffs' unit pending resolution of the preliminary injunction motion.  (Dkt. No. 2.)  The participating parties further agreed to an expedited briefing schedule on the jurisdictional bar posed by Rooker-Feldman.  (Id.)

By letter dated February 15, 2007, plaintiffs argued that their claims are not barred by Rooker-Feldman.  (Dkt. No. 3.)  On February 20, 2007, Bedford Gardens submitted separate responses in opposition to the Jacobowitz plaintiffs, (Dkt. No. 4, 5), and to the Berkowitz plaintiffs, (Dkt. No. 6), arguing, inter alia, that Rooker-Feldman does bar plaintiffs' claims against it.  Plaintiffs submitted a reply brief on February 21, 2007.  (Dkt. No. 9.)  For the reasons stated below, plaintiffs' claims against Bedford Gardens are dismissed for lack of subject matter jurisdiction pursuant to the Rooker-Feldman doctrine and, to the extent that the court has jurisdiction over plaintiffs' claims, the court denies plaintiffs' motion for a preliminary injunction.

## BACKGROUND

*a.  Bedford Gardens*

Bedford Gardens is a publicly assisted housing development company organized under New York's Private Housing Finance Law, also known as the Mitchell-Lama law.  (Compl. ¶ 14, 18; Itkowitz Decl. ¶9.)

*b.  The Jacobowitz Plaintiffs*

The Jacobowitz plaintiffs reside in an apartment located at 84 Ross Street, #3D, Brooklyn, New York, and owned by Bedford Gardens.  (Compl. ¶ 6, 7, 22; Jacobowitz Aff. ¶ 9.)  On November 21, 1997, Bedford Gardens entered into a Housing Court stipulation with Silka Sure Hecht, whereby Hecht would be "added to the 'household composition'" for the apartment

leased to Torsette Gilmore upon conditions which, construing the complaint in favor of the plaintiffs, seem to have been met.  (Order to Show Cause Ex. D ¶ 12; Compl. ¶ 24.)  Hecht continued to live in the apartment; upon marrying Hecht, Jacob Jacobowitz moved into the apartment.  (Compl. ¶ 25-26.)

The Jacobowitzes sought to remove Gilmore from the lease, invoking "the right of a common law successor co-tenant."  (Compl. ¶ 27.)  By letter dated February 22, 2002, Bedford Gardens denied the Jacobowitzes' succession rights.  (Compl. ¶ 28.)  The Jacobowitzes did not file an appeal with HPD, yet HPD issued a Denial of Appeal for Succession Rights and a certificate of eviction on October 21, 2002.[1]  (Compl. ¶ 29; Order to Show Cause Ex. E.)  HPD's decision noted that the "only review of this determination is pursuant to Article 78 of the Civil Practice Law and Rules."  (Order to Show Cause Ex. E.)

On April 28, 2003, Bedford Gardens commenced an action against the Jacobowitzes in Supreme Court, seeking ejectment and damages for unpaid rent.  (Compl. ¶ 30; Order to Show Cause Ex. F.)  The Jacobowitzes asserted several affirmative defenses, including their right "to a trial de novo of all issues raised by the HPD Hearing Officer at the administrative paper review that resulted in the purported Certificate of Eviction.  The administrative determination was made without and in excess of HPD's jurisdiction [and] was violative of Defendants' due process rights, . . . ."  (Order to Show Cause Ex. G ¶ 31.)  By Order dated December 10, 2004, the Supreme Court denied Bedford Gardens's motion for summary judgment and set the matter down for a trial de novo and evidentiary hearing, citing City of New York v. Scott, 239 A.D.2d

---

[1] According to the Complaint, HPD's denial was dated October 21, 2003.  (Compl. ¶ 29.) This appears to be a typographical error as Bedford Gardens commenced its action, invoking HPD's denial, on April 28, 2003.  (Order to Show Cause Ex. F.)

113 (N.Y. App. Div. 1st Dep't 1997), for the proposition that where a tenant is not provided

notice of his right to Article 78 relief, Article 78 is not the exclusive remedy and trial <u>de novo</u> is

permissible.  (Order to Show Cause Ex. H.)

On May 2, 2006, the Appellate Division, Second Department, reversed the Supreme

Court's December 10th order.  The Appellate Division, after noting that HPD's decision had

informed the Jacobowitzes that their only avenue of review was via Article 78, held

> HPD is vested with exclusive jurisdiction to determine remaining
> family-member claims in city-aided Mitchell-Lama housing, and
> its issuance of a certificate of eviction cannot be collaterally
> attacked in a subsequent action for ejectment.  If the defendants
> felt aggrieved by HPD's determination, their remedy was to
> challenge that determination in a CPLR article 78 proceeding–a
> step they failed to take.

<u>Bedford Gardens Co., LP v. Jacobowitz</u>, 29 A.D.3d 501, 502-03 (N.Y. App. Div. 2d Dep't

2006).  The Appellate Division further held, "The defendants' affirmative defenses are without

merit."  <u>Id</u>. at 503.  The Appellate Division ordered that Bedford Gardens be granted summary

judgment on its cause of action for ejectment.  <u>Id</u>. at 501.

On August 18, 2006, the Supreme Court entered judgment awarding Bedford Gardens

possession of the apartment.  (Order to Show Cause Ex. A.)  A warrant of eviction was issued,

but the Jacobowitzes succeeded in getting a temporary stay from the Supreme Court.  (Compl. ¶

34-35; Order to Show Cause Ex. J.)  However, by order dated February 2, 2007, the Supreme

Court denied the Jacobowitzes' motion to stay the eviction until June 1, 2007.  (Compl. ¶ 35;

Order to Show Cause Ex. K.)

A final eviction notice dated February 7, 2007, informed the Jacobowitzes that they

would be evicted on February 15, 2007.  (Order to Show Cause Ex. A.)

4

*c. The Berkowitz Plaintiffs*

The Berkowitz plaintiffs resided in an apartment located at 90 Ross Street, #3N, Brooklyn, New York, and owned by Bedford Gardens, from 1976 until they were evicted on December 13, 2006.  (Compl. ¶ 8, 38-41.)  The Berkowitzes "received a rental subsidy under the Section 8 program" during their 30 years living there.  (Compl. ¶ 39.)  (Bedford Gardens continues "to accept rent payments on [the Berkowitzes'] behalf from Section 8."  (Berkowitz Aff. ¶ 7, 9.)

Bedford Gardens accused the Berkowitzes of making unauthorized renovations to their apartment.  The Berkowitzes deny this and assert that any renovations were "performed by the landlord's own employees, agents and/or maintenance staff . . . in full and open view to management."  (Compl. ¶ 42-45.)  Bedford Gardens requested a hearing with HPD to terminate the Berkowitzes' tenancy on the grounds that the alleged alterations constituted a breach of a substantial obligation of their lease.  (Compl. ¶ 46.)  On March 31, 1998, Edith Berkowitz appeared at the HPD hearing and agreed to an inspection of the apartment on April 21, 1998. (Compl. ¶ 47; Order to Show Cause Ex. M.)  The Berkowitzes assert that Edith "was told that Bedford Gardens or their attorney would call them to let them know whether they would have to return for a further hearing."  (Compl. ¶ 47.) (The HPD decision dated July 28, 1998, states that "May 5, 1998 was chosen as the date for the hearing in consultation with both parties."  (Order to Show Cause Ex. M.))  Neither HPD nor Bedford Gardens contacted the Berkowitzes and so nobody appeared on behalf of the Berkowitzes at HPD's May 5, 1998, hearing.  (Compl. ¶ 48; Order to Show Cause Ex. M.)  When the Berkowitzes learned they had missed the May 5th hearing, they contacted the HPD hearing officer to explain their misunderstanding and request an

opportunity to submit evidence.  The HPD hearing officer told Solomon Berkowitz that she would re-open the matter and he should contact her secretary to schedule a date; Solomon suggested dates to the secretary and was told that the Berkowitzes would be informed of the new date after Bedford Gardens' attorney was contacted.  (Compl. ¶ 49.)  (The HPD decision dated July 28, 1998, states that "[w]ith the consent of Mr. Berkowitz June 17, 1998 was scheduled for the re-opened hearing." (Order to Show Cause Ex. M.))  Neither HPD nor Bedford Gardens contacted the Berkowitzes regarding a new date for a hearing, so nobody appeared on their behalf at HPD's June 17, 1998, hearing.  (Compl. ¶ 50-51; Order to Show Cause Ex. M.)  The Berkowitzes assert that they had been in discussions with Bedford Gardens' attorney and with Bedford Gardens' employees at the building and had been told by one of Bedford Gardens' on-site agents "not to worry about the whole thing as the landlord was no longer pursuing it." (Compl. ¶ 50.)

By decision dated July 28, 1998, HPD determined that the Berkowitzes had substantially renovated their apartment without authorization, in violation of their lease.  (Order to Show Cause Ex. M.)  Bedford Gardens' assistant vice president of maintenance testified about the renovations and a kitchen contractor's estimate that the work cost approximately $40,000. (Order to Show Cause Ex. M.)  The Berkowitzes assert that the super "was upset that [they] had not paid him to 'do the job.'" (Compl. ¶ 52.)  HPD issued a certificate of eviction, staying it for thirty days, and, citing the cost of the renovations, suggested an investigation for fraud.  (Order to Show Cause Ex. M.)

After learning that HPD had on June 17, 1998, held another hearing without them, the Berkowitzes wrote to the hearing officer to explain their absence and assert their defenses.

6

(Compl. ¶ 53, 55-56.)  Upon receiving the Berkowitzes' letter, the HPD hearing officer,

apparently treating it as a request to re-open the matter, wrote to Bedford Gardens' attorney

informing her that she could proceed on the Certificate of Eviction.  (Compl. ¶ 54.)  The

Berkowitzes never received this letter from the HPD officer and, citing the lack of service, assert

that their request to re-open the matter has not been decided.  (Compl. ¶ 54.)

By petition dated January 18, 2001, Bedford Gardens commenced an eviction proceeding

in Housing Court.  (Compl. ¶ 57; Order to Show Cause Ex. M.)  The Berkowitzes asserted

several affirmative defenses, including the failure to receive notice of the hearing date and their

entitlement to a trial de novo of all issues raised at the administrative hearing.  (Order to Show

Cause Ex. N.)  By decision dated December 7, 2001, the Housing Court denied Bedford

Gardens' motion for summary judgment and granted the Berkowtizes' request for trial de novo.

(Order to Show Cause Ex. O.)

By decision dated July 29, 2003, the Appellate Term modified the Housing Court's order

by granting Bedford Gardens' motion for summary judgment.  Bedford Gardens Co. v.

Berkowitz, 2003 WL 22319199, at *1 (N.Y. App. Term July 29, 2003).  The Appellate Term

held:

> The determination of the Department of Housing
> Preservation and Development (DHPD), after an administrative
> hearing, that tenants violated their section 8 lease by carrying out
> substantial and unauthorized renovations, may not be collaterally
> attacked in a subsequent summary proceeding notwithstanding that
> said determination was "taken by default."  The hearing
> procedures afforded tenants a full and fair opportunity to litigate
> the claim[,] which they forfeited by failing to appear at the hearing,
> and to respond to the hearing officer's request for additional
> information after the hearing officer had, in essence, deemed
> tenants' post-hearing letter a motion to reopen the hearing and
> granted said motion.

> We have considered tenants' remaining contentions and
> find them without merit or academic given the determination
> herein.

Bedford Gardens Co. v. Berkowitz, 2003 WL 22319199, at *1 (N.Y. App. Term July 29,

2003)(internal citations omitted).  The Berkowitzes assert that their arguments that the Code of

Federal Regulations entitled them to a trial de novo were not addressed by the Appellate Term.

(Compl. ¶ 62.)

(Bedford Gardens' response to the instant motion includes additional procedural history

recounting the litigation between the parties from September 2003 to December 2006.  (Rizzo

Aff. ¶ 13-22 & Ex. B.))

On December 13, 2006, Bedford Gardens executed a warrant of eviction and removed the

Berkowitzes from their apartment.  (Compl. ¶ 63.)  The Appellate Term subsequently stayed

Bedford Gardens from removing any of the contents of the apartment and referred the matter

back to the Housing Court, which denied the Berkowitzes' motion to be restored to possession

but granted them conditional permission to remove their belongings between February 20-23,

2007.  (Compl. ¶ 64-65.)

### *Plaintiffs' Claims*[2]

The Jacobowitz plaintiffs seek a judgment declaring that they were entitled to a trial de

novo in state court pursuant to the Code of Federal Regulations, HUD regulations and the HUD

Handbook, and that therefore Bedford Gardens cannot rely on HPD's determination denying the

---

[2] The court does not address the claims of David Hochhauser in this decision since they
are not the subject of the motion for a preliminary injunction.  Nor does the court address
plaintiffs' claims against HPD.  The court notes that HPD, by letter dated February 21, 2007,
requested an opportunity to be heard on issues beyond the Rooker-Feldman doctrine.  (Dkt. No.
7.)  The court has not solicited briefings from HPD at this time.

Jacobowitzes' succession rights.  (Compl. ¶ 97.)

The Berkowitz plaintiffs seek a judgment declaring that they were similarly entitled to a trial de novo and that therefore Bedford Gardens cannot rely on HPD's determination of their default.  (Compl. ¶ 100.)

The plaintiffs further seek an injunction prohibiting Bedford Gardens from taking adverse action against them without first a trial de novo in Housing Court and/or a final determination of this action.  (Compl. ¶ 106.)

## DISCUSSION

### *Rooker-Feldman Doctrine*

Based on the general principle "that within the federal judicial system, only the Supreme Court may review state-court decisions," the Rooker-Feldman doctrine holds that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments."  Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85, 84 (2d Cir. 2005).

The Supreme Court has recently clarified the narrow scope of the doctrine.  See Lance v. Dennis, 126 S. Ct. 1198, 1201 (2006) (per curiam) ("[O]ur cases since Feldman have tended to emphasize the narrowness of the Rooker-Feldman rule."); Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283, 291 (2005) (noting that lower courts have extended the doctrine "far beyond the contours of the Rooker and Feldman cases," and explaining "the limited circumstances in which this Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes" subject-matter jurisdiction in the district court); Hoblock, 422 F.3d at 85 ("In Exxon Mobil, the Supreme Court pared back the Rooker-Feldman doctrine to its core . . . .").

In Hoblock, the Second Circuit examined Exxon Mobil and identified "four requirements

for the application of <u>Rooker</u>-<u>Feldman</u>": (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; (4) "the state-court judgment must have been rendered before the district court proceedings commenced–i.e., <u>Rooker</u>-<u>Feldman</u> has no application to federal-court suits proceeding in parallel with ongoing state-court litigation." 422 F.3d at 85 (internal quotation marks omitted). <u>Hoblock</u> describes the first and fourth requirements as "procedural," and the second and third as "substantive." <u>Id</u>.

The "procedural" <u>Rooker</u>-<u>Feldman</u> requirements are met in this case. The plaintiffs were parties to the underlying state-court proceedings and they lost there. The fact that plaintiffs did not commence the state court actions which they lost, (Pl. Letter, Dkt. No. 3 at 2), does not alter this conclusion. Indeed, the fact that the federal-court plaintiff was the defendant in state-court has been used as a "rough guide" for finding <u>Rooker-Feldman</u> applicable, since it suggests that the losing state-court defendant is likely complaining of injury at the hands of the state court and not injury at the hands of the state-court plaintiff. <u>See</u> <u>Garry v. Geils</u>, 82 F.3d 1362, 1367 (7th Cir. 1996).[3]

The state court judgments were rendered before the plaintiffs commenced this action and the state proceedings have ended. The plaintiffs have not argued otherwise and they do not appear to seek further action in state court. Moreover, the state proceedings have "ended with respect to the issues that the federal plaintiff[s] seek[] to have reviewed in federal court, even if other matters remain to be litigated." <u>Federacion de Maestros de Puerto Rico v. Junta de</u>

---

[3] <u>See</u> 18 <u>Moore's Federal Practice</u> § 133.30[3][c] at 133.30.10 (suggesting that the Supreme Court's <u>Exxon Mobil</u> decision "seems to support the reasoning underlying" this rough guide).

Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 26 (1st Cir.2005); Phillips ex rel. Green v. City of New York, 453 F. Supp. 2d 690, 713-15 (S.D.N.Y. 2006).  The plaintiffs' complaint deals with the wrongfulness of the state-court proceedings granting Bedford Gardens possession on the basis of the HPD determinations, issues as to which state court proceedings have ended even if plaintiffs have continued until quite recently to seek in state court stays of the evictions.

The "substantive" Rooker-Feldman requirements are more vigorously disputed. Regarding the third requirement–that plaintiffs "invite district court review and rejection of" the state-court judgments–plaintiffs argue that they do not seek to reject or review the state court judgments, (Pl. Reply at 5; Pl. Mem. at 1), and that the relief they seek "here is not the same as the relief sought in the state action."  (Pl. Letter, Dkt. No. 3 at 2.)  This argument is without merit.  Even if this were true, "a federal suit is not free from Rooker-Feldman's bar simply because the suit proceeds on legal theories not addressed in state court."  Hoblock, 422 F.3d at 87.  In this case, plaintiff's argument is not even true.  The relief plaintiffs seek here is the same relief plaintiffs sought from the state courts.  Here, plaintiffs seek a judgment declaring their entitlement to a trial de novo to review HPD's decisions and an injunction prohibiting Bedford Gardens from taking possession of their apartments prior to such judicial review.  (Compl. ¶ 97, 100, 106.)  In the state court proceedings, the plaintiffs asserted this right to a trial de novo as one of their affirmative defenses to Bedford Gardens' judicial actions against them.  (Order to Show Cause Ex. G ¶ 31; Order to Show Cause Ex. N.)  The plaintiffs here were successful in the lower state courts in obtaining a trial de novo, but lost when Bedford Gardens appealed those rulings.

The issue is whether the plaintiffs are seeking review and reversal of the state-court

judgments. Their request for declaratory and injunctive relief indicates that they are. The state courts ordered that Bedford Gardens may take possession by summary judgment, without affording plaintiffs the benefit of a trial de novo. Plaintiffs now ask this court to declare that they were entitled to a trial de novo and to enjoin Bedford Gardens from benefitting from the state courts' judgments. This requirement is therefore satisfied.

While Rooker-Feldman does not necessarily bar a federal suit that seeks to "'deny a legal conclusion' reached by the state court," the determination of when such a suit is barred by Rooker-Feldman depends on the second requirement identified in Hoblock. Hoblock, 442 F.3d at 87 (quoting Exxon Mobil, 544 U.S. at 293.) This requirement entails determining the source of the injury of which plaintiffs complain: injuries caused by a state-court judgment do not present "independent" claims and are therefore barred by Rooker-Feldman. See Hoblock, 442 F.3d at 87-89.

Plaintiffs allege that they are injured by the absence of a trial de novo to review HPD's determinations prior to Bedford Gardens' taking possession of their apartments. The parties dispute whether this injury was caused by the state court judgments, in which case it would be barred by Rooker-Feldman, or this injury preceded the state court judgments and was caused by Bedford Gardens, in which case it would not be barred.

The resolution of this inquiry has been complicated by plaintiffs' shifting arguments. None of them, however, succeeds in getting plaintiffs' the preliminary injunction they request.

In the memorandum of law filed in support of their motion for a preliminary injunction, plaintiffs argue that "by this action" they seek "relief concerning the failure of DHPD and the state courts to (1) provide for a judicial trial de novo on the issues and defenses underlying

DHPD['s] determination[s] denying Plaintiffs' possessory rights to their apartments as tenants and the issuance of Certificates of Eviction against them, as mandated by the Code of Federal Regulations and the HUD Handbook . . . ."  (Pl. Mem. at 2.)  Plaintiffs go on to argue that courts "have repeatedly found that a tenant facing eviction based on an administrative determination is entitled to a trial de novo in Housing Court.  Yet State Courts today refuse to adhere to such precedent."  (Pl. Mem. at 9.)  Their argument goes on to assert that this alleged federal right is "a right that the State Courts will not provide for.  Thus Federal relief is necessary to protect the Plaintiffs' constitutional rights."  (Pl. Mem. at 12.)  They further argue that "the State Courts today, certainly in the State's Second Judicial Department, will not give such review, and thus the Plaintiffs face eviction and/or have been evicted without an opportunity to defend themselves, present and cross-examine witnesses, and seek judicial review."  (Pl. Mem. at 14.)

As these quotations illustrate, plaintiffs are pointing their fingers at the state courts as the source of their injury.  Where plaintiffs complain of an injury caused by a state judgment, Rooker-Feldman requires that plaintiffs make their case to the Supreme Court.  Therefore, to the extent plaintiffs' claims complain about the state-court judgments, they are dismissed for lack of subject-matter jurisdiction.

Plaintiffs attempt, however, to escape this outcome by cleverly arguing that they have an independent claim because, somehow, Bedford Gardens had an obligation "to commence judicial actions wherein the claims are presented de novo" prior to evicting them.  (Pl. Reply at 8.)  Plaintiffs argue that federal law requires a landlord to proceed by "judicial action" to evict tenants, that this requirement means a trial of the issues de novo and not merely confirmation of the administrative action, that the requirement is not satisfied by Article 78 review of

administrative action, and that it is not satisfied by state court ejectment or eviction actions in which agency determinations are given effect because they had not been challenged in Article 78 proceedings. (Pl. Reply at 2, 5, 6.) On this view, as plaintiff argues, "[t]he source of injury herein is both the administrative determination and the housing company's election to seek ratification rather than federally mandated judicial review." (Pl. Reply at 6.)

The absolute lack of merit to this argument reveals that its only purpose is to avoid the strictures of Rooker-Feldman. In support of this argument, plaintiffs invoke the Due Process Clause and cite 42 U.S.C. § 1437d(k); 24 C.F.R. §§ 966.57, 982.555; and provisions of the HUD Handbook. (Compl. ¶ 2, 92-96; Pl. Mem. at 7-8; Dkt. No. 3 at 3-4.) These citations do not come close to raising a question as to whether Mitchell-Lama landlords are somehow obligated to proceed in the manner plaintiffs allege. The statutory citation merely requires a public housing agency to establish "an administrative grievance procedure." See 42 U.S.C. § 1437d(k). The federal regulations cited merely set forth the requirements of an "informal hearing," 24 C.F.R. § 982.555, and provide that a hearing officer's decision in favor of a public housing agency "shall not . . . affect in any manner whatever, any rights the complainant may have to a trial de novo or judicial review in any judicial proceedings, which may thereafter be brought in the matter." 24 C.F.R. § 966.57. The HUD Handbook provides that, "An owner must not evict any tenant except by judicial action pursuant to state and local laws." HUD Handbook 4350.3, Ch. 8-13[B][5][a]. Plaintiffs' additional citations to the Handbook are equally unavailing.

These citations do not even slightly suggest that federal law prohibits Mitchell-Lama landlords from evicting a tenant by obtaining a favorable housing agency decision and then seeking and obtaining summary judgment in state court based on that determination when the

tenant has failed to challenge that determination pursuant to the state or local laws providing for such review. Nor have plaintiffs established a question as to whether the Due Process Clause is offended by Bedford Gardens proceeding in this manner. Plaintiffs' argument that the avenue of relief they chose not to pursue–Article 78 review of HPD's decisions–is inadequate because it does not provide for reversal on the grounds of judicial error, (Pl. Mem. at 8), is meritless. An Article 78 proceeding may be brought to see whether an agency determination was made in violation of lawful procedure or was affected by an error of law. See CPLR § 7803(3); Robinson v. Lindsay Park Housing Corp., No. 00 Civ. 6305, 2001 WL 483493, at *7 (E.D.N.Y. May 8, 2001).

Although plaintiffs argue so in order to avoid Rooker-Feldman, there is nothing to support the contention that Bedford Gardens' method of proceeding in these matters violated some federal requirement for more expansive judicial review than what the New York courts already provided.

While this argument may help plaintiffs partially avoid Rooker-Feldman, it does not help them win a preliminary injunction. "It is well-settled in the Second Circuit that in order to obtain a preliminary injunction, a plaintiff must show: (1) irreparable harm; and (2) either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in the plaintiff's favor." Calvagno v. Bisbal, 430 F. Supp. 2d 95, 100 (E.D.N.Y. 2006).

As the preceding discussion shows, plaintiffs have failed to satisfy the second requirement. Plaintiffs have shown neither likelihood of success on the merits nor, assuming the balance of hardships tips in their favor, sufficiently serious questions going to the merits of

whether Mitchell-Lama landlords are obligated by federal law to proceed with evictions in the manner plaintiffs suggest.  Therefore, to the extent plaintiffs' claims are not barred by <u>Rooker</u>-<u>Feldman</u>, the court denies plaintiffs' motion for a preliminary injunction.

## CONCLUSION

For the reasons stated above, plaintiffs' claims against Bedford Gardens are dismissed for lack of subject matter jurisdiction pursuant to the <u>Rooker</u>-<u>Feldman</u> doctrine and, to the extent that the court has jurisdiction over plaintiffs' claims, the court denies plaintiffs' motion for a preliminary injunction.

SO ORDERED.

/S/_____
Allyne R. Ross
United States District Judge

Dated:          February 22, 2007
                Brooklyn, New York

SERVICE LIST:

*Attorney for Plaintiffs*
David Michael Berger
Tenenbaum Dunbar Saltiel & Berger, LLP
26 Court Street, Penthouse
Brooklyn, NY 11242

*Attorneys for Defendant Bedford Gardens*
Jay B. Itkowitz
Itkowitz & Harwood
305 Broadway
7th Floor
New York, NY 10007

Rita Rizzo
Kraus & Kraus LLP
33-01 Vernon Boulevard
Long Island City, NY 11106

*Attorney for Defendant HPD*
Michelle Goldberg-Cahn
The City of New York Law Department
Office of Corporation Counsel
100 Church Street
New York, NY 10007

cc:          Magistrate Judge Pohorelsky